# 22-1251

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

NAFEESA SYEED, and similarly situated employees,

*Plaintiff-Appellant,*

NAULA NDUGGA,

*Plaintiff,*

—against—

BLOOMBERG L.P.,

*Defendant-Appellee,*

MATTHEW WINKLER, JOHN MICKLETHWAIT,
MARTY SCHENKER, RETO GREGORI, JOHN DOES 1-10,

*Defendants.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

NIALL MACGIOLLABHUI
LAW OFFICE OF NIALL MACGIOLLABHUI
171 Madison Avenue, Suite 305
New York, New York 10016
(646) 850-7516

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................ 3

     I.     The Narrow Interpretation of *Hoffman* Adopted by the District
           Court is Wrong and Unsupported by other Courts to have
           Addressed the Issue ............................................................. 3

     II.    The Decision of the District Court is Incompatible with the
           Liberal Construction Mandated by the NYCHRL ............................. 9

CONCLUSION ..................................................................................... 10

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Albunio v. City of New York*,
   16 N.Y.3d 472 (2011) ........................................................................... 14

*Anderson v. HotelsAB, LLC*,
   No. 15-CV-712 (LTS)(JLC), 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015)
   ................................................................................................. *passim*

*Chau v. Donovan*,
   357 F. Supp. 3d 276 (S.D.N.Y. 2019) ...................................................8

*Fried v. LVI Servs, Inc.*,
   500 Fed. Appx. 39 (2d Cir. 2012) .................................................. 6-7

*Hoffman v Parade Publications*,
   15 N.Y.3d 285 (2010) ................................................................ *passim*

*Hubbell-Petang v. Hotel Rsrv. Serv., Inc.*,
   No. 20-CV-10988 (GBD), 2022 WL 602900 (S.D.N.Y. Mar. 1, 2022) ...............8

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
   492 F. Supp. 3d 184 (S.D.N.Y. 2020) ...................................................6

*Meilus v. Rest. Opportunities Ctr. United, Inc.*,
   No. 21-CV-02554 (CM), 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021) ..............8

*Pedroza v. Ralph Lauren Corp.*,
   No. 19-CV-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ........... 7-8

*Pouncy v. Danka Office Imaging*,
   No. 06-CV-4777 (RPP), 2009 WL 10695792 (S.D.N.Y. May 19, 2009).............4

*Regan v. Benchmark Co.*,
   No. 11-CV-4511 (CM), 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) ..................4

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
   No. 19-CV-6034 (JPO), 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) ...............8

*Shiber v. Centerview Partners LLC*,
  No. 21-CV-3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022)..........5-6, 8

*Wang v. Gov't Emps. Ins. Co.*,
  No. 15-CV-1773 (JS)(ARL), 2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016)..6-7

This brief is submitted by Plaintiff-Appellant Nafeesa Syeed ("Plaintiff Syeed") in reply to the brief of Defendant-Appellee Bloomberg L.P. ("Bloomberg") dated September 2, 2022.

## **INTRODUCTION**

The issue presented to this Court is how the impact test set forth in *Hoffman v. Parade Publications*, 15 N.Y.3d 285 (2010), should apply in failure-to-hire and failure-to-promote cases where a non-resident plaintiff's prospective workplace is located in New York. According to Bloomberg, *Hoffman* limited the protections of the City and State Human Rights Laws in such cases to non-resident plaintiffs who already work in New York. That reading of *Hoffman* is narrow and wrong, since the impact test requires that the allegedly discriminatory conduct have an impact in New York, not that a non-resident plaintiff already work in New York. The distinction does not generally matter in cases involving a single (existing) workplace, since the location of the workplace will also be where the impact of the conduct is felt by the plaintiff. In cases, however, where a non-resident plaintiff is discriminatorily denied prospective employment at a New York workplace, the impact is not felt by the plaintiff at their existing workplace (assuming they are employed); it is felt at the location of the employment that was discriminatorily denied.

Restricting the protections of the New York City Human Rights Law

1

("NYCHRL") and the New York State Human Rights Law ("NYSHRL") in prospective employment cases to non-resident plaintiffs who are already employed in New York will arbitrarily exclude plaintiffs who work outside New York or are not currently employed. It will arbitrarily include plaintiffs whose pre-existing New York employment is wholly unconnected to and unimpacted by the alleged discrimination. It will also lead to perverse results, particularly in failure-to-hire cases. For example, if a non-resident plaintiff maintains their existing New York employment through the allegedly discriminatory decision by the prospective employer, they will have a viable failure-to-hire claim. If, however, the existing employment ends sometime after the prospective employment was sought but before the discriminatory conduct occurred, the claim will be lost.

        If the Court of Appeals in *Hoffman* intended to limit the protections of the NYCHRL and NYSHRL to persons who already lived or worked in New York, it would have articulated the requirement in those straightforward terms. Plaintiff Syeed submits that the narrow reading of *Hoffman* to this effect by the district court is unnecessary and erroneous, and that the competing line of district court authority beginning with *Anderson v. HotelsAB, LLC*, No. 15-CV- 712 (LTS)(JLC), 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015), represents the correct approach in failure-to-hire and failure-to-promote cases where the existing workplace (if any) is not located in

New York. Theses cases have correctly held that impact test in *Hoffman* is not synonymous with the physical location of a non-resident plaintiff's workplace. Bloomberg refers to them dismissively as "minority decisions." *See* Resp. Br. at 9. In fact, as set forth below, the district court decision here is in a minority of one, as the only decision (including three district court decisions that followed it) to take issue with the reasoning in *Anderson*. This Court should not endorse its restrictive and mistaken reduction of the impact test to an existing employment test for non-resident plaintiffs discriminatorily denied employment in New York. That interpretation of the jurisdictional scope of the NYSHRL should be rejected. The liberal construction required of the NYCHRL's jurisdictional provisions mandates its rejection.

## **ARGUMENT**

### I. The Narrow Interpretation of *Hoffman* Adopted by the District Court is Wrong and Unsupported by other Courts to have Addressed the Issue

According to Bloomberg, Plaintiff Syeed has "invented" a new impact test for non-resident plaintiffs, which asks "where the plaintiff is impacted *in their employment*." *See* Resp Br. at 2. In fact, as noted in *Anderson*, in the context of the NYCHRL, "courts have consistently emphasized that the location of the impact of the offensive conduct is the location where the plaintiff feels the impact of a violation of the NYCHRL *on his or her employment*." 2015 WL 5008771 at *3 (emphasis added). Bloomberg does not engage with the substantive analysis in *Anderson*, preferring to

3

reiterate the lower court's criticism, i.e. that *Anderson* cited *Regan v. Benchmark Co.*, No. 11-CV-4511 (CM), 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) as an example of the impact test, and that *Regan* in turn cited *Pouncy v. Danka Office Imaging*, No. 06-CV-4777 (RPP), 2009 WL 10695792 (S.D.N.Y. May 19, 2009), a pre-*Hoffman* decision. This criticism is particularly tenuous since Bloomberg does not argue that *Regan* (or *Pouncey*) was wrongly decided but only that it "is factually distinguishable" from the present case. *See* Resp Br. at 20. That point adds nothing: *Regan* is neither a failure-to-hire nor a failure-to-promote case and is therefore factually distinguishable from all such cases.

The other criticism of *Anderson*, made by the district court and also reiterated by Bloomberg, is that it "undermines the central tenet proclaimed in *Hoffman*" by expanding the protections of the NYCHRL and NYSHRL "to include individuals who do not work in the city or state, but who merely speculate that they might have done so someday in the future." *Id.* at 21 (citations omitted). This criticism misrepresents the breadth of the *Anderson* holding, since, as already pointed out in Plaintiff Syeed's principal brief, the impact test as applied in *Anderson* does not encompass merely speculative allegations of someday working in New York. Moreover, the criticism is not that *Anderson* undermines *Hoffman*, but that it undermines the narrow reading of *Hoffman* adopted by the district court here, which

4

dictates that non-resident plaintiffs can only show that they were impacted by alleged discrimination if they already work in New York. The majority opinion in *Hoffman* concluded as follows: "According to the complaint, Hoffman was neither a resident of, nor employed in, the City or State of New York. *Nor* does Hoffman state a claim that the alleged discriminatory conduct had any impact in either of those locations. At most, Hoffman pleaded that his employment had a tangential connection to the city and state." 15 N.Y.3d 285 at 292 (emphasis added). Thus, though *Hoffman* concerned a single, existing workplace outside New York, it suggested that alleged discriminatory conduct still could have an impact in New York City or State even if the plaintiff neither lived nor worked in those locations.

On the other hand, *Hoffman* is silent as to where the impact is felt from the denial of prospective employment in New York. Bloomberg points to *Shiber v. Centerview Partners LLC*, No. 21-CV-3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022), as one of two cases to have also rejected the "prospective workplace" analysis in *Anderson*. *See* Resp. Br. at 14-16. *Shiber* does no such thing (which is why it is cited in Plaintiff Syeed's principal brief); quite to the contrary, rather than reject the *Anderson* analysis, the *Shiber* court found the plaintiff's allegations were "not enough" to constitute "a discriminatory failure-to-hire claim" since "Shiber points to no facts showing—with any specificity—that she one day would have been

5

able to work in Centerview's New York City offices or that she relied on some promise of eventual in-person work." 2022 WL 1173433 at *4. The court cited *Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184 (S.D.N.Y. 2020), in support of this conclusion, wherein the *Anderson* approach was found to apply in circumstances "where the impact of the plaintiff was specifically tied to their being deprived a job in New York on discriminatory grounds," as opposed to "a mere hope to work in New York down the line." *Id.* at 199.

The second case which, according to Bloomberg (*see* Resp. Br. at 14-15), rejected the "prospective workplace" analysis is *Wang v. Gov't Emps. Ins. Co.*, No. 15-CV-1773 (JS)(ARL), 2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016). The plaintiff there both lived and worked in Long Island but nevertheless contended that if she had received a particular "supervisory attorney position, she would have handled cases in "New York City Civil Courts and District Courts."" *Id.* at * 7 (citation omitted). *Wang* is not a case of a prospective workplace in New York City. It is a case of a prospective Long Island workplace with a tangential connection to New York City. Notably, the *Wang* court cited this Court's decision in *Fried v. LVI Servs., Inc.*, 500 Fed. Appx. 39 (2d Cir. 2012), "affirming the district court's grant of summary judgment on an NYCHRL claim when the plaintiff lived and worked in Connecticut even though he frequently communicated with [defendant's] New York headquarters

6

and attended meetings in New York City." 2016 WL 11469653, at *7 (quotation omitted).

The remaining case relied upon by Bloomberg in support of its argument that "[s]ince *Anderson* was decided, other courts have reached the same conclusion as the lower court here and found *Anderson* to be inapposite to claims alleged by current employees," *see* Resp. Br. at 22, is *Pedroza v. Ralph Lauren Corp.*, No. 19-CV-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020). The plaintiff in that case, a New Jersey resident, originally worked for the defendant in New York but was promoted in 2018 to a New Jersey-based position. After approximately a year in the position, she alleged that she was subjected to discriminatory conduct. She argued that this conduct had an impact in New York City based on her "occasional travel and her work with other employees in City"; her attendance at certain "meetings and training in New York City"; and because, "if she were not terminated, she would have continued to travel to New York City for meetings and keep in contact with RLC managers in the City." *Id.* at *3-4. The district court rejected these arguments, because "[c]ourts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to the City are tangential and do not satisfy the impact requirement," and because the "mere potential of being asked to work in New York City is plainly inadequate." *Id.* at *2, 4 (citations omitted).

7

Thus, far from supporting the present district court decision, the other district court decisions relied upon by Bloomberg stand for propositions that are undisputed: namely, that tangential connections to New York will not satisfy the impact test, nor will unspecified future career prospects. Furthermore, in *Shiber*, the only decision cited by Bloomberg that discussed *Anderson*, the court did not reject its analysis but found that the facts before it were distinguishable. Aside from the other failure-to-hire cases that follow *Anderson*—namely *Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019) and *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019)—*Shiber* is one of three decision that were issued following the district court decision here that nonetheless endorsed the Anderson approach. *See also Meilus v. Rest. Opportunities Ctr. United, Inc.*, No. 21-CV-02554 (CM), 2021 WL 4868557, at *10 (S.D.N.Y. Oct. 15, 2021) ("[I]f the complaint alleges that out-of-state discriminatory conduct "affected the terms and conditions of plaintiff's employment within [New York]," the impact requirement is satisfied.")(quoting *Anderson*); *Hubbell-Petang v. Hotel Rsrv. Serv.*, Inc., No. 20-CV-10988 (GBD), 2022 WL 602900, at *7 (S.D.N.Y. Mar. 1, 2022) ("Discrimination resulting in the failure to hire an individual to work in New York is a cognizable NYHRL claim by nonresidents.")(citing *Anderson* and *Chau*).

The district court's interpretation of the impact test as it applies to

8

prospective employment in New York is therefore not only wrong but wholly unsupported by the other district court decisions to have addressed the issue.

## II. The Decision of the District Court is Incompatible with the Liberal Construction Mandated by the NYCHRL

Plaintiff Syeed, in her principal brief, argued that the lower court had adopted an erroneously narrow interpretation of the impact test under *Hoffman*, and that, furthermore, to the extent that *Anderson* and the district court's decision represent competing interpretations of the impact test, the former should prevail for purposes of the NYCHRL because of the mandate that all its provisions must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–478 (2011). Bloomberg characterizes this argument as a suggestion that "the 2005 and 2016 amendments to the NYCHRL construction provision, N.Y.C. Admin. Code § 8-130, somehow wiped away *Hoffman*'s ruling that the NYCHRL is limited to non-residents who "work in the city." *See* Resp. Br. at 23.

However, as already discussed at length, *Hoffman* did not hold that the protections of the NYCHRL are limited to non-residents who already work in New York City. It held, in construing the jurisdictional scope of the NYCHRL, that non-resident plaintiffs must show that the alleged discriminatory conduct had an impact in New York City. The district court, and Bloomberg, are advancing a narrow

9

interpretation of that holding, whereas *Anderson* and Plaintiff Syeed are advancing a more expansive one. The latter interpretation, which constitutes a reasonably possible construction in favor of non-resident plaintiffs, is mandated by the NYCHRL.

## <u>CONCLUSION</u>

For the reasons set forth above, and in Plaintiff Syeed's principal brief, this Court should reverse the district court's decision and order.

Dated: New York, New York
      September 16, 2022

Respectfully submitted,

*Niall MacGiollabhui*

_____
NIALL MACGIOLLABHUI, ESQ.
LAW OFFICE OF NIALL
      MACGIOLLABHUÍ
171 Madison Avenue, Suite 305
New York, NY 10016
(646) 850-7516

*Appellate Counsel to:*

THE CLANCY LAW FIRM, P.C.

*Attorneys for Plaintiff-Appellant*

10

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the page limitation of Fed. R. App. P.

   32(a)(7)(A) because it does not exceed 15 pages.

2. This brief complies with the typeface requirements of Fed. R. App. P.

   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

   because this brief has been prepared in a proportionally spaced typeface

   using Microsoft Word in Times New Roman 14-point font.

Dated: New York, New York
    September 16, 2022

                /s/ Niall MacGiollabhuí
                NIALL MACGIOLLABHUÍ, ESQ.
                LAW OFFICE OF NIALL
                  MACGIOLLABHUÍ
                171 Madison Avenue, Suite 305
                New York, NY 10016
                Tel: (646) 850-7516